UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAY 1 9 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

SECURITIES AND EXCHANGE COMMISSION,
450 Fifth Street, NW
Washington, DC 20549

Plaintiff,

v.

GALLEON MANAGEMENT, L.P.,

Defendant.

CASE NUMBER: 1:05CV1006
JUDGE: RICARDO M. URBINA
DECK TYPE: GENERAL CIVIL
DATE STAMP: 05/19/05

## COMPLAINT FOR CIVIL PENALTY

Plaintiff, United States Securities and Exchange Commission ("Commission"), for its Complaint alleges as follows:

### SUMMARY

1. This action arises from a violation of Rule 105 of Regulation M under the Securities Exchange Act of 1934 ("Exchange Act") [17 C.F.R. § 242.105(a)(1)] by Defendant Galleon Management, L.P. ("Galleon"). Rule 105 of Regulation M, "Short Selling in Connection With a Public Offering," prohibits covering a short sale with securities obtained in a public offering if the short sale occurred within five business days before the pricing of the offering (the "Rule 105 restricted period"). In pertinent part, Rule 105 provides: "In connection with an offering of securities for cash pursuant to a registration statement ... filed under the Securities Act, it shall be unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during the ... period beginning five business days before the pricing of

the offered securities and ending with such pricing ...." Id. Rule 105 is prophylactic and prohibits the conduct irrespective of the short seller's intent in effecting the short sale.

2. In connection with 17 follow-on offerings from 2000 through 2003, Galleon sold securities short during five business days before the pricing of public offerings and then covered the short positions with securities purchased in the offerings ("offering stock"). These transactions occurred in seven of Galleon's funds with the majority of violations occurring in Galleon's Admiral's Offshore, Ltd. fund. As a result of these transactions, Galleon realized profits of $1,040,882.

3. By engaging in the conduct described above, Galleon violated Rule 105 of Regulation M under the Exchange Act [17 C.F.R. § 242.105(a)(1)].

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d)(3)(A) of the Exchange Act [15 U.S.C. § 78u(d)(3)(A)] to obtain a civil money penalty from Defendant Galleon.

5. This Court has jurisdiction over this action pursuant to Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa]. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

6. Defendant, directly and indirectly, has made use of the means or instruments of transportation or communication in interstate commerce, or of the mails in connection with the acts, practices and transactions alleged herein.

## DEFENDANT

7. Galleon, a Delaware limited partnership whose principal place of business is in New York, NY, is the investment adviser for a number of large hedge funds. Galleon is not currently registered with the Commission as an investment adviser. At all times, Galleon has had full discretion to make investment decisions for its funds.

## FACTS

### Prime Broker "Collapses"

8. In connection with a number of offerings, Galleon created a boxed position by establishing a long position with shares purchased in a follow-on offering of an issuer while simultaneously maintaining a short position in the securities of the same issuer established during the Rule 105 restricted period. Galleon instructed the prime broker to make journal entries that canceled out the long and short positions, thereby covering the short position with the offering stock.

9. In connection with 11 offerings, Galleon instructed its prime broker to flatten follow-on offering boxed positions through the use of riskless, offsetting journal entries, a practice known as "collapsing the box."

10. These violations occurred in the follow-on offerings of Aeropostale Inc. (NYSE: ARO), Forward Air Corporation (NASDAQ: FWRD), iNet Technologies, Inc. (NASDAQ: INTI), Pacer International, Inc. (NASDAQ: PACR), Safenet, Inc. (NASDAQ: SFNT), Strayer Education, Inc. (NASDAQ: STRA), Verint Systems, Inc. (NASDAQ: VRNT), BeFree, Inc. (NASDAQ: BFRE), Cache, Inc. (NASDAQ: CACH), Yellow Corporation (NASDAQ: YELL) and NuSkin Enterprises, Inc. (NYSE: NUS). These violations resulted in illegal profits of

$410,522.

11.   An example of Galleon collapsing follow-on offering boxed positions is as follows: Galleon participated in a May 2003 follow-on offering of VRNT. The Registration Statement for an offering of 5,000,000 shares of VRNT common stock was filed with the Commission on May 19, 2003. The shares were priced after the close of trading on June 12, 2003 at $23.00 per share.

12.   Within five business days before the pricing of the offering, Galleon established a short position of 43,310 shares in VRNT with two transactions consisting of 23,510 shares at $24.14 and 19,800 shares at $23.52. On the morning of June 13, 2003, Galleon increased its short position by an additional 20,000 shares.

13.   On the morning of June 13, 2003, Galleon received a 95,000 share allocation of the VRNT offering priced at $23.00 per share. Galleon sold 31,690 shares of the offering stock in two separate transactions days later, leaving Galleon with a 63,310 share boxed position.

14.   On July 3, 2003, Galleon instructed its prime broker to collapse the 63,310 share boxed position. The violation resulted in an illegal profit of $37,097.

### Contemporaneous Unwinding of Follow-on Offering Boxed Positions

15.   Galleon unwound follow-on offering boxed positions by contemporaneously entering a market order to sell the offering shares and another order to purchase an equivalent number of shares, which were then used to cover the short position that had been established

4

during the Rule 105 restricted period. These unwinding transactions were entered through two different brokers and executed in the open market.

16. These violations occurred in the follow-on offerings of Artisan Components, Inc. (NASDAQ: ARTI), Endo Pharmaceuticals Inc. (NASDAQ: ENDP) and Centene Corp. (NYSE: CNC). These violations resulted in illegal profits of $170,635.

17. An example of Galleon contemporaneously unwinding follow-on offering boxed positions is as follows: Galleon participated in an August 2003 follow-on offering of CNC. The Registration Statement for an offering of 3,000,000 shares of CNC common stock was filed with the Commission on July 22, 2003. The shares were priced after the close of trading on August 7, 2003 at $25.00 per share.

18. Within five business days before the pricing of the offering, Galleon established a 70,000 share short position in CNC with three transactions consisting of 30,000 shares at $26.11, 20,000 shares at $25.82 and 20,000 shares at $25.18.

19. On the morning of August 8, 2003, Galleon received a 100,000 share allocation of the CNC offering at $25.00, resulting in a 70,000 share boxed position and an additional 30,000 share long position. This 30,000 share long position was subsequently sold a day after the offering.

20. On August 12, 2003, through two separate brokers, Galleon contemporaneously entered a market order to sell the 70,000 offering shares and a market order to cover the 70,000 share short position that was established during the Rule 105 restricted period. The orders were ultimately filled at a price difference of less than one penny per share. This

5

resulted in an illegal profit of $52,600.

### Cross Trade

21. On one occasion, Galleon flattened a follow-on offering boxed position by executing a cross trade, in which Galleon crossed the long and short position against each other resulting a flat position in the issuer's stock. The trade was executed through one broker. Galleon realized illegal profits of $28,950. This occurred in a follow-on offering of iNet Technologies, Inc. (NASDAQ: INTI).

22. Galleon flattened its follow-on offering boxed position in INTI in the following manner: Galleon participated in an October 2003 follow-on offering of INTI. The Registration Statement for an offering of 8,000,000 shares of INTI common stock was filed with the Commission on September 18, 2003. The shares were priced after the close of trading on October 7, 2003 at $12.50 per share.

23. Within five business days before the pricing of the offering, Galleon established a 20,000 share short position in INTI with two transactions consisting of 15,000 shares at $14.03 and 5,000 shares at $13.70. On the morning of October 8, 2003, Galleon received a 75,000 share allocation of the INTI offering at $12.50 per share, resulting in a 20,000 share boxed position and an additional long position of 55,000 shares.

24. On October 27, 2003, Galleon executed a cross trade at $12.82 per share. As a result, the 20,000 share short position that was established during the Rule 105 restricted period was covered with 20,000 shares of the offering stock.

### Purchases Entered as Covering Transactions

25. Galleon violated Rule 105 through purchases of offering stock that were entered into Galleon's trading system to cover short positions that were established during the Rule 105 restricted period. These violations occurred in the follow-on offerings of Aeropostale Inc. (NYSE: ARO), Kinder Morgan, Inc. (NYSE: KMR), Seagate Technology (NYSE: STX) and TTM Technologies, Inc. (NASDAQ: TTMI). These violations resulted in illegal profits of $430,775.

26. An example of one such transaction by Galleon is as follows: Galleon participated in a July 2002 follow-on offering of KMR. The Registration Statement for an offering of 12,000,000 shares of KMR common stock was filed with the Commission on June 27, 2002. The shares were priced after the close of trading on July 31, 2002 at $27.50 per share.

27. Within five business days before the pricing of the offering, Galleon established a short position of 200,000 shares in KMR consisting of four transactions that were executed at prices ranging from $28.30 to $29.78 per share.

28. On the morning of August 1, 2002, Galleon received a 200,000 share allocation in the KMR offering priced at $27.50 per share. The shares were entered into Galleon's system as a purchase to cover Galleon's short position established during the Rule 105 restricted period. The violation resulted in an illegal profit of $220,200.

### CLAIM

## Galleon Violated Rule 105 of Regulation M Under the Exchange Act

29.   Paragraphs 1 through 28 are realleged and incorporated herein by reference.

30.   Rule 105 of Regulation M under the Exchange Act makes it "unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during the ... period beginning five business days before the pricing of the offered securities and ending with the pricing." [17 C.F.R. § 242.105(a)(1)].

31.   Recent interpretive guidance by the Commission provides that "where the transaction is structured such that there is no legitimate economic purpose or substance to the contemporaneous purchase and sale, no genuine change in beneficial ownership, and/or little or no market risk, that transaction may be a sham transaction." Such a transaction occurs when "a trader effects pre-pricing short sales during the Rule 105 restricted period, receives offering shares, sells the offering shares into the open market, and then contemporaneously or nearly contemporaneously purchases an equivalent number of the same class of shares as the offering shares, which are then used to cover the short sales." Short Sales, Exchange Act Release No. 50103 (Sept. 7, 2004).

32.   As set forth above, Galleon sold short shares of follow-on offerings within five business days before the pricing of 17 follow-on offerings.

33.   Galleon subsequently obtained allocations of shares in the follow-on offerings and Galleon used the allocated shares to cover its outstanding short positions in the issuers' stock. As a result of this conduct, Galleon violated Rule 105 of Regulation M under the

8

Exchange Act [17 C.F.R. § 242.105(a)(1)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court:

I.

Enter an order requiring defendant Galleon to pay a $870,247 civil money penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

II.

Grant such other relief as the Court deems just and appropriate.

Dated: 5/19/05

Respectfully submitted,

*/s/*

Peter H. Bresnan
John Reed Stark (DC Bar # 425187)
Thomas A. Sporkin (DC Bar # 444865)
Michael J. Monticciolo
Michael J. Juliano
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
450 Fifth Street, N.W.
Washington, D.C. 20549-0908
(202) 551-4892 (Stark)
(202) 772-9278 (fax)